UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------x

HOLDEN COMMONS, LLC,

                     :

            Plaintiff,                  Civ. A. No. 04-CV-40149 (FDS)

                     :

        v.

                     :

BIG Y FOODS, INC.,

                     :

           Defendant.

---------------------------------------------------------x

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER
SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Holden Commons LLC respectfully submits this short reply in further

support of its motion for preliminary injunction. None of defendant Big Y's arguments

casts doubt on the likelihood of success or the irreparable nature of the harm that would

befall Holden Commons if the pharmacy is allowed to open.

First, nothing in the affidavit or opposition submitted by Big Y changes the

unequivocal terms of the lease. Section 6 of the lease gives Big Y the exclusive right to

sell the following items within a five mile radius: "groceries, meat, fish, fruits,

vegetables, food products and food supplies of any kind, at wholesale or retail or for off

premises consumption, with the exception of the normal drug store . . . ." (Lease § 6, Ex.

A at 14-15.)[*] Prescription drugs were specifically excluded from this list of items

covered by Big Y's exclusivity provision. That is not surprising because Big Y required -

- as a condition precedent to opening -- the presence of "a pharmacy being operated by a

---

[*] References are to the exhibits attached to the Complaint filed on August 3, 2004.

regional major chain." (Lease § 2(b), Ex. A at 4.)  The Court need look no further than the lease itself to find that prescription drugs were not among the type of "merchandise customarily carried by supermarkets." (Lease § 5, Ex. A at 13.)

Second, that the type of merchandise customarily sold did not include prescription drugs is underscored by the state of the law in Massachusetts at the time.  When the lease was executed in April 1988, pharmacies could not -- as a matter of law -- have been customary in supermarkets in Massachusetts.  Until five months earlier, November 1987, supermarkets could not even be licensed to sell prescription drugs here, and the statute provides for up to five months to act on pharmacy license applications.  Mass. Gen. L. c. 112, § 39.  What supermarkets may have lawfully sold in other states at the time is simply irrelevant.  Massachusetts law governs the lease.  (Lease § 34(d), Ex. A at 53.)

Third, the "Use" provision of the lease, section 5, allows Big Y to change its product mix, so long as that change does not put it in competition with another business in the shopping center.  Although the "initial purpose" was limited to "operating . . . a supermarket selling merchandise customarily carried in supermarkets," Big Y remains free to change that initial use "provided that at the time of such change in use there is not then a competing business located within the Shopping Center." (Lease § 5, Ex. A at 14.) The items Big Y points to -- "health and beauty aids, newspapers, cigarettes, and prepared foods" (Opp'n at 9) -- do not represent a change in use that competes with an existing business because those items were specifically exempted from the exclusivity provision of the lease.  (Lease § 6, Ex. A at 15; see also CVS Lease § 31, Ex. B at 17 (allowing other tenants such as Big Y to sell health and beauty aids "as an incidental part of their business," i.e., less than 15% of its retail space).)

Fourth, that a pharmacy is a different business is made clear by the express terms of Big Y's radius restriction in Section 6 of the lease. The language of the restriction, as indicated above, could not be more clear. Big Y's five mile radius restriction applies only to "groceries, meat, fish, fruits, vegetables, food products and food supplies of any kind…." This is the business Big Y sought to protect. A "normal drug store" was excluded from the restriction because the drug store was not a part of Big Y's business. Furthermore, the sale of prescription drugs involves a fundamentally different process than the sale of food products. A license is required to sell drugs, not so with food products. A doctor's prescription is needed. A trained pharmacist must be employed to fill the prescriptions. All of those factors evidence that a pharmacy is a different business than Big Y opened in Holden Commons.

And, of course, this new business would compete directly with CVS. Big Y does not attempt to argue to the contrary. Instead, Big Y contends that it "was not on notice" of the exclusive contained in CVS's lease executed in August 1988, less than four months after Big Y's lease. (Opp'n at 10; D'Amour Aff. ¶ 8.)[**] But when Big Y first became aware of CVS's exclusive is irrelevant. Big Y has known for over sixteen years that CVS has been selling prescription drugs next door. It cannot now, in violation of the plain terms of the lease, change its use of the premises to compete with an existing tenant of the shopping center.

---

[**] Nothing in this Court's local rules requires the filing of an affidavit in support of a motion for preliminary injunction. Big Y misconstrues Local Rule 7.1(b)(1). (Opp'n at 2) That rule, by its terms, requires a party filing a motion to file the accompanying memorandum "at the same time," and further provides that any "Affidavits or other documents setting forth or evidencing acts on which the motion is based shall be filed with the motion," i.e., at the same time. D. Mass. L. R. 7.1(b)(1).

CVS's exclusive is relevant, however, to the reasonableness of Holden Commons' refusal to consent.  As landlord to CVS, Holden Commons is contractually obligated not to permit the use of a competing "pharmacy prescription department" in the shopping center.  (CVS lease § 31, Ex. B at 17.)  Holden Commons' refusal to breach its contractual obligations is not unreasonable.  See Worcester-Tatnuck Square CVS, Inc. v. Kaplan, 33 Mass. App. Ct. 499, 504, 601 N.E.2d 485, 489 (1992) (commercial landlord's refusal to consent to sublease not unreasonable where it was not given prospective subtenant's gross sales figures necessary to calculate percentage rent under the lease).

Fifth and finally, the CVS exclusive is also relevant to show how Holden Commons will be irreparably harmed if Big Y opens a pharmacy.  That would not only pit the shopping center's two anchor tenants competing against each other, it would also put Holden Commons in breach of the CVS lease, which would allow CVS "at any time thereafter" to either abate the rent by 50% or "at its option" to terminate the lease.  (CVS Lease § 31, Ex. B at 18.)  Holden Commons would be cast into an untenable and uncertain position: Would CVS stay put and compete with Big Y's pharmacy, or would it elect to terminate and move elsewhere, perhaps causing other business tenants to do the same?  That state of uncertainty could be indefinite since the CVS lease would be terminable at will "at any time thereafter."  Such injuries are irreparable, particularly where the injury involves real estate.  K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 915 (1st Cir. 1989).

The cases cited by Big Y do not hold otherwise.  For example, the SJC case, Hull Mun. Lighting Plant v. Mass. Mun. Wholesale Elec. Co., 399 Mass. 640, 506 N.E.2d 140 (1987) (Opp'n at 12, 14), actually affirmed a preliminary injunction granted to a power

plant that was compelled to continue making payments to an electric utility, even though only economic loss was at issue.  The other Massachusetts appellate case, Kobayashi v. Orion Ventures, 42 Mass. App. Ct. 492, 678 N.E.2d 180 (1997) (Opp'n at 13), misses the point: if CVS elects to abate the rent, then there may be a measure of economic loss, but CVS may instead -- at any time and in its sole discretion -- elect to terminate, and the fallout from that decision would be incalculable.  The two First Circuit cases cited by Big Y (Opp'n at 12) are inapposite because both involved letters of credit, not real estate, and "an injunction to impede the honoring of a letter of credit is an extraordinary remedy that should rarely be granted."  Foxboro Co. v. Arabian Am. Oil Co., 805 F.2d 34, 37 (1st Cir. 1986) (citing Itek Corp. v. First Nat'l Bank, 730 F.2d 19 (1st Cir. 1984)).

In support of its argument that the prospective loss of other tenants is "speculative" (Opp'n at 14), Big Y cites two unpublished cases, both of which are distinguishable.  In the first case, the Superior Court refused to grant an affirmative injunction that would have required a Boston Chicken franchisee to reopen its unprofitable restaurant and continue operating at a loss where the landlord sought specific performance of a lease provision that required the tenant to "continuously operate its business."  Ciolfi v. Boston Chicken, No. 97-4812, 1997 WL 625450, at *1 (Mass. Super. Ct. Oct. 6, 1997).  Money damages were determinable because the loss would have been limited to the lost rent, which Boston Chicken was willing to pay.  In the second case, Allen v. R.K. Assocs., Inc., No. 04-J-344 (Mass. App. Ct. Aug. 2, 2004), a single justice of the Appeals Court vacated an injunction granted in favor of a Subway restaurant against the landlord of a shopping center, who had been enjoined from renting other space in the mall to a bakery that sold similar sandwiches.  The sole issue was whether

the bakery's business involved the sale of the same kind of "submarine sandwiches" sold by Subway, in contravention of an exclusivity provision in the lease.  The appellate judge determined that the sandwiches were not and then vacated the injunction.  Here, by contrast, Big Y does not even contend that its opening of a pharmacy would not be a competing use and thus in violation of CVS's exclusive.

For the foregoing reasons and for the reasons stated in Holden Commons' opening memorandum, the Court should grant the preliminary injunction and enjoin Big Y from opening a pharmacy.

Respectfully submitted,

HOLDEN COMMONS, LLC
By its attorneys,

Of Counsel:

Michael R. Stavnicky
SINGERMAN, MILLS,
DESBERG & KAUNTZ CO.
3401 Enterprise Parkway, Suite 200
Beachwood, OH 44122
(216) 292-5807

/s/  Dennis A. Murphy
Rudolph F. Pierce (BBO #399380)
Dennis A. Murphy (BBO #645168)
GOULSTON & STORRS, P.C.
400 Atlantic Avenue
Boston, Massachusetts 02110
(617) 482-1776

Dated:  September 3, 2004